FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 18, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SPOKANE VALLEY FIRE DEPARTMENT,<br><br>            Plaintiff,<br><br>        v.<br><br>INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS AFL-CIO LOCAL 3701,<br><br>            Defendant. | No.  2:17-cv-00250-SMJ<br><br>**ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Spokane Valley Fire Department seeks a declaration that some of its employees—battalion chiefs and fire marshals who are members of Defendant International Association of Fire Fighters AFL-CIO Local 3701—are exempt from certain wage and hour provisions under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 213(a)(1). ECF No. 1. The Department seeks this relief under the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201(a), alleging, "[a]n actual, ongoing controversy exists between the parties as to whether the FLSA's 'bona fide' executive or administrator exemption applies to battalion chiefs and fire marshals." *Id.* at 4.

Before the Court is Local 3701's converted motion for summary judgment,

ECF No. 33. Local 3701 argues the Court lacks subject matter jurisdiction because no constitutionally required case or controversy exists. *Id.* First, Local 3701 contends the Department lacks standing and its claim is not ripe because the Department faces no imminent injury from an FLSA action brought by Local 3701 or its members. *Id.* Second, Local 3701 contends its legal interests are not adverse to the Department's because, without its members' written consent, Local 3701 is statutorily barred from bringing the type of FLSA action the Department fears. *Id.*

Because oral argument is unnecessary, the Court decides Local 3701's motion without it. *See* LCivR 7(i)(3)(B)(iii). Having reviewed the file in this matter, the Court grants Local 3701's motion and dismisses this case without prejudice.

## **BACKGROUND**[1]

The parties have been negotiating a new collective bargaining agreement since October 2016. ECF No. 57-1 at 3. They have not reached a final agreement. *Id.* The Department alleges the FLSA's exemption for bona fide executive or administrative employees applies to battalion chiefs and fire marshals. ECF No. 1 at

---

[1] The Department objects to numerous aspects of Local 3701's factual recitation, arguing all but two assertions are irrelevant, immaterial, speculative, or mischaracterizing. ECF No. 57 at 10–11. Having concluded the challenged evidence is admissible under Federal Rules of Evidence 401, 403, and 602, the Court overrules each of the Department's objections under Federal Rule of Civil Procedure 56(c)(2). Nonetheless, the Court will, as the applicable legal standard requires, view all evidence and draw all reasonable inferences in the manner most favorable to the Department.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 2

4–5; ECF No. 57 at 2. In negotiations, Local 3701 has remained steadfast in its position to the contrary. ECF No. 36 at 2. Local 3701 first asserted this position on April 20, 2017 and has not changed it since. ECF No. 12-4 at 2; ECF No. 57-1 at 9. The Department offered a new collective bargaining agreement that the exemption would not affect, regardless of whether it applies. ECF No. 36 at 2. But Local 3701 rejected the proposal because, it argues, doing so "would reduce its members' contractual entitlement to overtime below the amount required by the FLSA." ECF No. 55 at 4. Local 3701 soon declared an impasse in negotiations and demanded mediation. ECF No. 36 at 2; ECF No. 57-1 at 4. The parties are currently in mediation and the next step may be interest arbitration. ECF No. 57-1 at 2–4.

The parties' current collective bargaining agreement provides (1) the "normal working schedule for Fire Operations" consists of a maximum of 204 hours in a twenty-seven-day work period; (2) day officers work at least forty hours per week or a flexible schedule equivalent to at least eighty hours in a two-week period; (3) shift officers work one twenty-four-hour shift, starting and ending at 7:00 AM, followed by forty-eight hours off duty; (4) shift officers receive thirteen "Kelly days"[2] off in a calendar year, so as to reduce their annual work average to 50.02

---

[2] A Kelly day is "a day off or vacation day taken at a scheduled interval in addition to normal time off or vacation." Grant Barrett, *Kelly Day*, A WAY WITH WORDS (July 31, 2007), https://www.waywordradio.org/kelly_day/. Sources as early as 1953 claim this term derives from former Chicago mayor Edward Joseph Kelly, who reportedly instituted a similar plan for firefighters in 1936. *Id.*

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR
SUMMARY JUDGMENT **-** 3

hours per week; and (5) "Officers will receive overtime at a rate of 1.50 times their hourly rate for working in 3701 response positions outside their regular shift." ECF No. 33-1 at 30.

The Department declares that, until this dispute is resolved, it "will continue to operate under the current [collective bargaining agreement]" and "will not remit payment for overtime unless expressly provided for by the operative [agreement]." ECF No. 57-1 at 5. The Department posits that this could be problematic because "[t]here are provisions in the current [agreement] for which employees do not currently receive overtime payments (at 1.5x their regular rate of pay) for work beyond regular hours." ECF No. 57 at 5 (citing ECF No. 33-1 at 17, 34).

Each of Local 3701's members who are employed by the Department disavow having any FLSA overtime claim against it. *See id.* at 3–4; ECF No. 55-1 at 3; ECF No. 55-2 at 3; ECF No. 55-3 at 3; ECF No. 55-4 at 3; ECF No. 55-5 at 3; ECF No. 55-6 at 3; ECF No. 55-7 at 3; ECF No. 55-8 at 3; ECF No. 55-9 at 3; ECF No. 55-10 at 3. Specifically, Local 3701's members state they have not given their written consent to become plaintiffs in any FLSA lawsuit against the Department, they are not aware of any unpaid overtime owed to them by the Department that would entitle them to recovery under the FLSA, they have no intention of filing an FLSA lawsuit against the Department, they do not anticipate having an intention of filing an FLSA lawsuit against the Department in the future, they have never expressed an intention

of filing an FLSA lawsuit against the Department, and none of Local 3701's other members have expressed to them an intention to bring an FLSA lawsuit against the Department. ECF No. 33-1 at 3–4; ECF No. 55-1 at 3; ECF No. 55-2 at 3; ECF No. 55-3 at 3; ECF No. 55-4 at 3; ECF No. 55-5 at 3; ECF No. 55-6 at 3; ECF No. 55-7 at 3; ECF No. 55-8 at 3; ECF No. 55-9 at 3; ECF No. 55-10 at 3. Similarly, in negotiations with the Department, Local 3701 did not say its members intended to bring an FLSA lawsuit against the Department. ECF No. 33-1 at 3.

This "do[es] not provide the Department with any meaningful relief." ECF No. 57-1 at 9. If the Department negotiates for anything less than time-and-a-half as overtime compensation, "Local 3701 would assert the Department is arguing during negotiations for an illegal provision" and "[t]his assertion could subject the Department to unfair labor practices claims." *Id.* at 4. Additionally, the Department may be subject to investigation by federal and state administrative agencies. *Id.* at 2, 5–6. Meanwhile, the Department's uncertainty affects its ability to conduct its business, namely in setting budgets and assessing levies. *Id.* at 7–8.

The Department filed this lawsuit on July 11, 2017. ECF No. 1. Local 3701 moved for judgment on the pleadings on December 3, 2018. ECF No. 33. The Court's February 19, 2019 order, ECF No. 50, converted Local 3701's motion to one for summary judgment and directed the parties to present all pertinent materials.

//

## LEGAL STANDARD

The applicable summary judgment standard appears in the Court's February 19, 2019 order, ECF No. 50 at 10–11, and is incorporated herein. To defeat a summary judgment motion challenging standing or ripeness, the Department need not conclusively establish every element of those doctrines and need only show a genuine dispute of material fact as to those elements. *Martin v. City of Boise*, No. 15-35845, 2019 WL 1434046, at *20 (9th Cir. Apr. 1, 2019) (publication forthcoming).

## DISCUSSION

**The Department fails to show a genuine dispute of material fact on whether a justiciable case or controversy exists between it and Local 3701 or its members.**

The Court must dismiss a civil action if at any time it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). Federal courts have limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court presumes a civil action lies outside its limited jurisdiction and the burden to prove otherwise rests on the party asserting jurisdiction exists. *Id.* The opposing party can never forfeit or waive a challenge to subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Article III, section 2, clause 1 of the U.S. Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." The case-or-controversy requirement ensures federal courts do not "'decide questions that cannot affect the rights of

litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). The party invoking a federal court's jurisdiction bears the burden of establishing the case-or-controversy requirement is met. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "operative only in respect to controversies which are such in the constitutional sense." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 661 (1998) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). Indeed, "the phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

To determine whether a declaratory judgment action presents a justiciable case or controversy, the Court considers "whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). This case involves two components of the case-or-controversy requirement: "standing, which concerns *who* may bring suit, and ripeness, which concerns *when* a litigant may bring suit."[3] *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1247 (9th Cir. 2016).

---

[3] "A proper ripeness inquiry contains a constitutional and a prudential component." *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153 (9th Cir. 2017). Here, the Court does not reach prudential ripeness because constitutional ripeness and standing are dispositive. "For a case to be ripe[ under Article III], it must present issues that are 'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). "Constitutional ripeness is often treated under the rubric of standing because 'ripeness coincides squarely with standing's injury in fact prong.'" *Id.* (quoting *Thomas*, 220 F.3d at 1138). "For a plaintiff to meet the injury-in-fact prong of standing, the plaintiff must demonstrate 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Additionally, the "irreducible constitutional minimum of standing" also requires causation and redressability. *Lujan*, 504 U.S. at 560–61. Causation means "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560 (internal quotation marks, brackets, and ellipses omitted). Redressability means "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 8

Ultimately, "if 'the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then [the court has] jurisdiction,' so long as that coercive action would 'arise under' federal law." *Hornish v. King County*, 899 F.3d 680, 691 n.2 (9th Cir. 2018) (alteration in original) (quoting *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985)), *cert. denied sub nom. Kaseburg v. Port of Seattle*, No. 18-838, 2019 WL 1590251 (U.S. Apr. 15, 2019); *see also id.* ("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there." (quoting *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997))). "In other words, in a sense [the court] can reposition the parties in a declaratory relief action by asking whether [it] would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy." *Id.* (alterations in original) (quoting *Standard*, 127 F.3d at 1181).

As the Court previously noted, "[t]he members of Local 3701 unquestionably could bring FLSA wage and hour claims against the Department either individually or collectively." ECF No. 16 at 6 (citing 29 U.S.C. § 216(b)). But the Court did not decide the issues now presented, namely, whether those potential claims have accrued and, if so, whether they are certainly impending and pose an imminent threat, so as to establish standing and ripeness.

The Court begins its analysis by "first examin[ing] the underlying law"—"the

authority governing the asserted controversy between the parties." *Shell*, 771 F.3d at 636. "Under the FLSA, an employer must pay its employees premium overtime compensation of one and one-half times the regular rate of payment for any hours worked in excess of forty in a seven-day work week." *Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016) (citing 29 U.S.C. § 207(a)); *see also Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 531 (1985) (holding FLSA overtime requirements apply to state and local government functions). An employer who violates FLSA overtime requirements is liable for employees' unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable attorney fees and costs. 29 U.S.C. § 216(b).

"Additionally, employees cannot waive the protections of the FLSA, nor may labor organizations negotiate provisions that waive employees' statutory rights under the FLSA." *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) (citation omitted) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945), and *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981)).

However, in 29 U.S.C. § 207(k), "[t]he FLSA also provides 'a limited exemption from the overtime limit to public employers of . . . firefighters.'" *Flores*, 824 F.3d at 895 (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999)). "The partial overtime exemption in § 207(k) 'increases the overtime limit slightly and it gives the employer greater flexibility to select the work period over

which the overtime limit will be calculated.'" *Id.* (quoting *Adair*, 185 F.3d at 1060). "[U]nder § 207(k), an employer must compensate 'fire protection' employees with overtime payments only after the employee works more than 212 hours in a twenty-eight-day period." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1253 (9th Cir. 2014). Consistent with § 207(k)'s ratio of hours to days, "if the number of days in the work period is decreased to twenty-seven, the number of hours an employee must work before earning overtime is decreased to 204." *Id.* (citing 29 C.F.R. § 553.230). Such firefighters would "receive[] overtime pay only if they work[] more than 204 hours in a twenty-seven-day work period." *Id.*

The parties' current collective bargaining agreement utilizes the § 207(k) exemption. ECF No. 33-1 at 30. Specifically, the agreement provides (1) the "normal working schedule for Fire Operations" consists of a maximum of 204 hours in a twenty-seven-day work period; (2) day officers work at least forty hours per week or a flexible schedule equivalent to at least eighty hours in a two-week period; (3) shift officers work one twenty-four-hour shift, starting and ending at 7:00 AM, followed by forty-eight hours off duty; (4) shift officers receive thirteen "Kelly days" off in a calendar year, so as to reduce their annual work average to 50.02 hours per week; and (5) "Officers will receive overtime at a rate of 1.50 times their hourly rate for working in 3701 response positions outside their regular shift." *Id.*

Considering how this agreement implements the § 207(k) exemption, each of

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 11

Local 3701's members who are employed by the Department disavow having any FLSA overtime claim against it. *See id.* at 3–4; ECF No. 55-1 at 3; ECF No. 55-2 at 3; ECF No. 55-3 at 3; ECF No. 55-4 at 3; ECF No. 55-5 at 3; ECF No. 55-6 at 3; ECF No. 55-7 at 3; ECF No. 55-8 at 3; ECF No. 55-9 at 3; ECF No. 55-10 at 3. Specifically, Local 3701's members state they have not given their written consent to become plaintiffs in any FLSA lawsuit against the Department, they are not aware of any unpaid overtime owed to them by the Department that would entitle them to recovery under the FLSA, they have no intention of filing an FLSA lawsuit against the Department, they do not anticipate having an intention of filing an FLSA lawsuit against the Department in the future, they have never expressed an intention of filing an FLSA lawsuit against the Department, and none of Local 3701's other members have expressed to them an intention to bring an FLSA lawsuit against the Department. ECF No. 33-1 at 3–4; ECF No. 55-1 at 3; ECF No. 55-2 at 3; ECF No. 55-3 at 3; ECF No. 55-4 at 3; ECF No. 55-5 at 3; ECF No. 55-6 at 3; ECF No. 55-7 at 3; ECF No. 55-8 at 3; ECF No. 55-9 at 3; ECF No. 55-10 at 3. Similarly, in negotiations with the Department, Local 3701 did not say its members intended to bring an FLSA lawsuit against the Department. ECF No. 33-1 at 3.

Thus, the parties' current collective bargaining agreement properly implements the § 207(k) exemption to the extent that it has not, to date, produced

any known violations of FLSA overtime requirements.[4] But this "do[es] not provide the Department with any meaningful relief" because it is concerned with a different FLSA exemption for bona fide executive or administrative employees. ECF No. 57-1 at 9. The FLSA exempts

> any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary[ of Labor], . . . except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities) . . . .

29 U.S.C. § 213(a)(1). A so-called "'first responder' regulation," ECF No. 1 at 5, provides this exemption does not apply to firefighters under some circumstances, 29 C.F.R. § 541.3(b)(1)–(3).

---

[4] The Department declares that, until this dispute is resolved, it "will continue to operate under the current [collective bargaining agreement]" and "will not remit payment for overtime unless expressly provided for by the operative [agreement]." ECF No. 57-1 at 5. The Department posits that this could be problematic because "[t]here are provisions in the current [agreement] for which employees do not currently receive overtime payments (at 1.5x their regular rate of pay) for work beyond regular hours." ECF No. 57 at 5 (citing ECF No. 33-1 at 17, 34). The Department points to two sections it claims provide employees regular pay for court appearances and jury service, and straight-time overtime pay for filling a vacancy. *See* ECF No. 33-1 at 17, 34; ECF No. 35 at 15. But the Department presents no evidence showing its reading of these sections has ever deprived employees of overtime compensation owed to them under the FLSA. Thus, the Department fails to demonstrate any potential FLSA overtime claims have accrued or are certainly impending and pose an imminent threat, so as to establish standing and ripeness.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 13

The Department alleges this exemption applies to battalion chiefs and fire marshals.[5] ECF No. 1 at 4–5; ECF No. 57 at 2. In negotiations, Local 3701 has remained steadfast in its position to the contrary. ECF No. 36 at 2. The Department offered a new collective bargaining agreement that the exemption would not affect, regardless of whether it applies. *Id.* But Local 3701 rejected the proposal because, it argues, doing so "would reduce its members' contractual entitlement to overtime below the amount required by the FLSA." ECF No. 55 at 4. Local 3701 soon declared an impasse in negotiations and demanded mediation. ECF No. 36 at 2; ECF No. 57-1 at 4.

The parties could still reach a final agreement despite their present impasse. ECF No. 58 at 11. The parties may succeed in mediation with the Washington State Public Employment Relations Commission. *See* Wash. Rev. Code ("RCW") § 41.56.440. But if, after a reasonable period of mediation, the Commission finds

---

[5] Indeed, the Department argues the parties' current collective bargaining agreement incorporates this exemption where it provides, "[t]he Department recognizes [Local 3701] as the exclusive bargaining agent for the *exempt* civil services positions listed below: Battalion Chief . . . Fire Marshal." ECF No. 33-1 at 8 (emphasis added); *see also* ECF No. 57-1 at 5. Whether the Department's position is correct, *see* ECF No. 12-6 at 2, or this section references some supervisory designation under a state statute for purposes of collective bargaining authority, *see* ECF No. 12-1 at 2; ECF No. 12-7 at 2, or this section references the § 207(k) exemption, *see* ECF No. 33-1 at 30, is immaterial because, again, the Department presents no evidence showing its reading of this section has ever deprived employees of overtime compensation owed to them under the FLSA. Thus, the Department fails to demonstrate any potential FLSA overtime claims have accrued or are certainly impending and pose an imminent threat, so as to establish standing and ripeness.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 14

the parties remain at an impasse, then an "interest arbitration panel" would be created. RCW 41.56.450; *see also* ECF No. 57-1 at 2–3.

"Interest arbitration is a process whereby if the union and the employer cannot agree on a new contract during collective bargaining, an arbitration panel will be formed to resolve any disputes over the terms of the new contract." *Snohomish Cty. Pub. Transp. Benefit Area v. State Pub. Emp't Relations Comm'n*, 294 P.3d 803, 806 (Wash. Ct. App. 2013). "Thus, when parties enter into interest arbitration, neither party is yet entitled to any specific right or remedy." *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 42 P.3d 1265, 1273 (Wash. 2002).

The party aggrieved by the arbitration panel's decision may appeal it to the appropriate Washington state superior court. *See* RCW 41.56.450. But still, no claim arising under the FLSA would have yet accrued.[6] The Court agrees with Local 3701 that its members "must then actually work additional time beyond the hourly

---

[6] The Department argues "this matter is likely to be before the Court in the future" because the arbitration panel would be unable to determine employee classification. ECF No. 57 at 6. In support, the Department includes a declaration from its human resources director indicating, based on her training, that "this matter is likely to end up with the courts again." ECF No. 57-1 at 3. But the Department presents no explanation for why the arbitration panel would be unable to determine employee classification. Even assuming the Department is correct on this point, it does not mean a federal cause of action would accrue. On the contrary, the contemplated recourse is through a state appeal. *See* RCW 41.56.450. Indeed, the Department's human resources director anticipates this matter likely ending up with "the courts," not specifically federal court. ECF No. 57-1 at 3. The Department takes too great of liberties with this statement in claiming the case will likely come back to *this Court*.

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 15

overtime threshold to be entitled to overtime pay and must then actually choose to file suit against the Department before their exempt or non-exempt status will be put at issue." ECF No. 33 at 20.

The Court also agrees with Local 3701 that "[t]his eventuality is so distant and uncertain that this lawsuit falls well short of the immediacy and imminence required to confer subject matter jurisdiction over a suit for declaratory judgment." *Id.* "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). "Thus, [the Supreme Court has] repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Here, the Department presents no evidence showing any potential FLSA overtime claims have accrued or are certainly impending and pose an imminent threat, so as to establish standing and ripeness. "It is axiomatic that differing views of the law are not enough to satisfy Article III." *Shell*, 771 F.3d at 637. "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art[icle] III's requirements." *Hollingsworth v. Perry*,

570 U.S. 693, 704 (2013) (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)).

The Department offers two additional reasons why it believes it has shown enough to establish a genuine dispute of material fact. First, the Department expresses concern that if it negotiates for anything less than time-and-a-half as overtime compensation, "Local 3701 would assert the Department is arguing during negotiations for an illegal provision" and "[t]his assertion could subject the Department to unfair labor practices claims." ECF No. 57-1 at 4. The Department notes Local 3701's members have given no assurances regarding such claims, which cannot be waived regardless. *Id.* at 4–5.

The Department's concern is rooted in Washington state law and, therefore, does not involve a potential "coercive action in federal court" that would "'arise under' federal law." *Hornish*, 899 F.3d at 691 n.2 (quoting *Janakes*, 768 F.2d at 1093). Elsewhere in its discussion, the Department establishes that its references to unfair labor practice claims denote "unfair labor practice claims under the Washington State Public Employment Relations Commission." ECF No. 57-1 at 2. The Department fails to identify a potential federal cause of action.

Second, the Department expresses concern that it may be subject to investigation by the U.S. Department of Labor or the Washington State Department of Labor and Industries. *Id.* at 2, 5–6. But no such investigation would arise unless the employer began violating FLSA overtime requirements by failing to pay the

employees what they are due. As discussed above, the parties' current collective bargaining agreement properly implements the § 207(k) exemption to the extent that it has not, to date, produced any known violations of FLSA overtime requirements. As Local 3701 notes, "contractual overtime payments under the [agreement] may well exceed the FLSA's minimum overtime payment requirements, regardless of how Local 3701 members are classified under the [agreement]." ECF No. 58 at 4 n.1. Thus, the Department fails to demonstrate how the status quo threatens a potential "coercive action in federal court" that would "'arise under' federal law."[7] *Hornish*, 899 F.3d at 691 n.2 (quoting *Janakes*, 768 F.2d at 1093).

The Court acknowledges how the Department's uncertainty affects its ability to conduct its business, namely in setting budgets and assessing levies. ECF No. 57-

---

[7] The Court previously concluded that "the threatened action [the Department] seeks to avoid would necessarily present a federal question arising under the FLSA." ECF No. 50 at 7–8. But the problem for the Department is that it fails to demonstrate any potential FLSA overtime claims have accrued or are certainly impending and pose an imminent threat, so as to establish standing and ripeness. By continuing to operate under the existing collective bargaining agreement, the Department is preserving an injury-free status quo. *See generally MedImmune*, 549 U.S. at 128 n.8. ("The justiciability problem that arises, when the party seeking declaratory relief is himself preventing the complained-of injury from occurring, can be described in terms of standing (whether plaintiff is threatened with imminent injury in fact fairly traceable to the challenged action of the defendant), or in terms of ripeness (whether there is sufficient hardship to the parties in withholding court consideration until there is enforcement action)." (internal quotation marks, citations, brackets, and ellipses omitted)).

ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT **-** 18

1 at 7–8. But as a tribunal with limited subject matter jurisdiction, the Court must not exceed its authority by rendering an advisory opinion.

Here, the facts alleged, under all the circumstances, do not reveal a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas.*, 312 U.S. at 273). The injury to be averted by this declaratory judgment action is conjectural or hypothetical rather than concrete and particularized, and actual or imminent. Thus, this declaratory judgment action presents issues that are hypothetical or abstract rather than definite and concrete. The Department fails to show a genuine dispute of material fact as to these elements of standing and ripeness.

Viewing all evidence and drawing all reasonable inferences in the manner most favorable to the Department, no reasonable trier of fact could find in its favor on whether this declaratory judgment action presents a justiciable case or controversy. On the contrary, a reasonable trier of fact could only find in favor of Local 3701. Therefore, Local 3701 has met its initial burden in support of summary judgment. By contrast, the Department has failed to point to specific facts establishing a genuine dispute of material fact for trial. The Department has failed to introduce the significant probative evidence required to defeat summary judgment. And, to the extent the Department has identified genuine factual disputes,

they are not material because they do not affect the outcome of this litigation and do not require trial to resolve differing versions of the truth.

In sum, the record establishes that no genuine dispute exists as to any material fact and Local 3701 is entitled to judgment as a matter of law because the Court lacks subject matter jurisdiction over the Department's claim for relief. Considering this ruling, the Court does not reach the parties' remaining arguments.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's converted motion for summary judgment, **ECF No. 33**, is **GRANTED**.
2. All claims are **DISMISSED WITHOUT PREJUDICE**, with all parties to bear their own attorney fees and costs.
3. All other pending motions are **DENIED AS MOOT**.
4. All hearings and deadlines are **STRICKEN**.
5. The Clerk's Office is directed to enter **JUDGMENT** of dismissal and **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 18th day of April 2019.

SALVADOR MENDOZA, JR.
United States District Judge